## MITCHELL *v.* NATIONAL WINDOW-CLEANING COMPANY.

Where one engaged in the business of window-cleaning sold to another the business and the good-will, and entered into a valid contract not to engage in that business within a certain limited territory and

within a limited time, he did not violate the contract by entering the employment of the owners of a building, under the terms of which employment he was required to do the general work of a janitor, to clean the walls and marble of the building, to fire boilers in the building, and to clean the windows. Under the terms of his employment the window-cleaning was merely incidental to his general work, and he did not thereby become engaged in the business of window-cleaning.

No. 3209. MARCH 1, 1923.

Injunction. Before Judge Ellis. Fulton superior court. January 13, 1922.

*Neufville & Neufville,* for plaintiff in error.

*Alfred C. Broom, Irene L. Bell,* and *Ernest C. Bell,* contra.

BECK, P. J. S. C. Orr and William Silver, doing business under the name and style of the National Window-Cleaning Company, brought their petition for injunction, etc., against N. V. Mitchell. It was alleged, that petitioners were engaged in the business of cleaning windows, as indicated by the name of the company; that the defendant was also engaged in that business; and that petitioners and defendant entered into a written contract under the terms of which, in consideration of the sum of $150, the defendant sold to the petitioners all of his "right, title, and interest in and to the business of N. V. Mitchell, the accounts and good-will of the company, and all contracts with customers for window-cleaning;" and in this contract Mitchell also agreed, in consideration of the sum stated above, "not to enter into the window-cleaning business personally or by agent or substitute within the city of Atlanta or the county of Fulton, for a period of ten years from the date of the contract, except as an employee of the said parties of the first part" (the petitioners). It is charged in the petition, that, in violation of the obligations assumed and imposed by this contract, Mitchell, almost immediately after the execution of the same and the payment of the $150 to him, entered into competition with petitioners in the business of window-cleaning; that on December 3, 1921, he was actually engaged personally in the work of cleaning windows under the employment of the owners of the Atlanta Trust Company building in the city of Atlanta; that at the time the contract between plaintiffs and defendant was entered into the owners of that building were customers of the defendant, and he was at that time employed by them to do the work and business of window-

cleaning in the building; that the contract right to clean the windows of this building was actually sold to your petitioners and paid for, and the " conduct of the defendant in subsequently carrying on the work and business of window-cleaning on said premises is in violation of his contract;" that as petitioners are informed and believe, it is the purpose and intention of the defendant to engage in the work of window-cleaning in the city of Atlanta, in competition with them and in violation of his contract, unless he is restrained by order of the court. Upon the hearing, evidence having been introduced by both parties, the court granted the injunction sought.

We are of the opinion that the court erred in granting this injunction, under the evidence in the case. The validity of the contract is not brought in question; but it is not shown under the evidence that the terms of the contract, properly construed, had been violated, or were about to be violated, by the defendant. It appears from uncontroverted testimony in the case that Mitchell, who had sold to the petitioners the business of window-cleaning in the city of Atlanta, subsequently to the execution of the contract had taken a position in the employment of the Atlanta Trust Company; but that his employment was not for the sole purpose of washing windows or engaging in the window-cleaning business, but it was his duty, under his contract of employment with the Atlanta Trust Company, " to fire boilers, wash marble, clean up around the building, or do any work that he was directed to do." This is taken from one of the affidavits submitted by the defendants; and it is further stated in the affidavit that the defendant had not engaged in the window-cleaning business after entering into the employment of the superintendent of the building. Mitchell also deposed that his duties with the Atlanta Trust Company, were firing boilers, assisting in the cleaning of the building or windows, or doing any other work which the building might require of him, or " any such other duties as a janitor might be required to perform." There was some evidence introduced by the plaintiffs, tending to show that he cleaned the windows of the trust company building. The work in which the defendant in this case engaged, under his employment by the superintendent of the trust company building, was not in violation of the terms of his contract with the plaintiffs, by which he sold

to them his business and the good-will thereof. The work of cleaning the windows of the building referred to was incidental to the general character of his employment, and he was not engaged in the "business of window-cleaning," giving to that expression its proper and usual signification.

Counsel for defendants in error cite the case of *Jefferson* v. *Markert,* 112 *Ga.* 498 (37 S. E. 758), and especially the following ruling in that case: "One who in selling out a given business and the good-will thereof contracted with the purchaser not to engage for a designated period in such a business in a named city could not, without violating his contract, carry on in that city, during the period covered by the agreement, a similar business for another or in another name, of which he was the exclusive manager, and the success of which depended entirely upon his skill, efficiency, personal reputation, and popularity. The more especially is this so if the arrangement to carry on the business as above was a mere pretext to cover a violation of the original contract." They also cite the case of *McAuliffe* v. *Vaughan,* 135 *Ga.* 852 (70 S. E. 322, 33 L. R. A. (N. S.) 255, Ann. Cas. 1912A, 290), where it was said: "The seller having sold the property and made the contract under seal in his own name, it furnished no defense to a proceeding to enjoin him from conducting another newspaper in the same county, in violation of the contract, to set up that the property which he sold actually belonged to his wife, and that he had no pecuniary interest in it." The soundness of these rulings is not questioned. They state well-recognized principles authorizing the issuance of an injunction against one who, after selling the business and good-will, attempts to violate the terms of his contract, and it is unnecessary to enter upon a discussion of the difference in the facts of the two cases last referred to and the facts of the present case. Enough to say, if, in the present case, it had appeared that in the name of another person or firm engaged in the business of window-cleaning in the city of Atlanta defendant had engaged in that business, or possibly if he had entered into the employment of a company engaged in the business of window-cleaning, he would have violated his contract. But the owners of the trust company building were not engaged in the business of window-cleaning; and in accepting employment by that company to discharge the general duties of

a janitor, cleaning marble in the building, looking after the boil-ers required in heating, and other purposes, and in engaging himself to do all other duties required of him in keeping the building clean, though in doing so he was required to clean windows, he was not engaged in the window-cleaning business. Window-cleaning may have been an important part of his work, but after all, it is only incidental to his general employment, which was not shown to be a mere pretext to cover a violation of his contract.

The judgment granting the injunction must be reversed, because it is not authorized by the evidence in the case.

*Judgment reversed. All the Justices concur.*